UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SHANNON CAMPBELL,

                        Petitioner,                  **DECISION AND ORDER**
     -vs-                                  **No. 04-CV-6261(VEB)**

T. POOLE, Supt., Five Points
Correctional Facility,

                        Respondent.
_____

## I.     Introduction

Shannon Campbell ("Campbell" or "petitioner") has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction following a jury trial in New York State County Court (Erie County) on sexual abuse charges. Campbell is currently incarcerated pursuant to this judgment of conviction. The parties have consented to disposition of this matter by a magistrate judge pursuant to 28 U.S.C. § 636(c)(1).

## II.    Factual Background and Procedural History

### A.    Summary

The convictions here at issue were based on Campbell's having sexually abused three young female victims–his daughter and two of his nieces. Campbell lived with his mother, Esther Campbell ("Mrs. Campbell"). Mrs. Campbell had a daughter, Esther Battiese, who had two daughters, Alicia Penn and Esther Penn. Alicia Penn's children included two of the victims in this case, Shakia and Shamika. Campbell also had seven children of his own, two of which were involved either directly or peripherally in this case. His daughter, Shanna, was the other victim.

Shanna's older brother, Chezere, was the first person to whom Shanna and Shakia revealed the

abuse. At the time of the incidents, Shanna and Shamika were eight years-old, and Shakia was

six. Campbell was accused of raping and sodomizing his daughter, Shanna, and his niece,

Shamika. He was alleged to have raped his six-year-old niece Shakia. Campbell was interviewed

by the police on two occasions–April 14, 1999, and April 27, 1999. He consistently denied any

criminal wrongdoing. T.181-82.[1] He was arrested on April 14th based on the complaints filed by

Shanna and Shamika. T.183.

Campbell was offered the opportunity to plead guilty to a reduced indictment with a

sentence promise of fourteen (14) years determinate; the offer was to remain available only up

and until the first complainant took the stand to testify. Prior to commencement of the

prosecution's case, trial counsel placed on the record that he had discussed the plea offer with his

client and had advised him that if he choose to proceed to trial and was convicted, the judge had

authority to impose consecutive sentences such that his potential sentence exposure was seventy-

five (75) years. Trial counsel informed the court that his client maintained his innocence and

wished to have a trial. Campbell confirmed that he understood the risks of going to trial and that

he did not wish to accept the plea offer, which was revoked by the prosecutor at that time.

Following a trial in Erie County Court (Tills, J.), a jury convicted Campbell of Sexual

Abuse in the First Degree (N.Y. Penal Law ("P.L.") § 130.65(3)), three counts each of Rape in

the First Degree (P.L. § 130.35(3)), Endangering the Welfare of a Child (Penal Law § 260.10(1)),

Sodomy in the First Degree (Penal Law § 130.50 (3)), and one count of Incest (Penal Law §

255.25). He was sentenced to consecutive terms of imprisonment aggregating seventy-five (75)

---

[1]        Citations to "T.__" refer to the trial transcript.

years.

**B.      The Trial**

      **1.      The Prosecution's Case**

           **a.      Shanna's Testimony**

Shanna, petitioner's daughter, was eight years-old at the time of the alleged abuse. She was living with her father at 60 Humason in the city of Buffalo. T.37. Shanna testified with trepidation about what happened. She stated that her father touched her "privacy" with his "privacy," and that "he put his in [hers]." T.37-38. Shanna stated that she used this "privacy" to "[p]ee." T.37. Petitioner's "privacy" or "thing" was not "sitting still" when it was inside her; "[i]t was moving." T.39. Then her father put his "privacy" "[i]n [her] other privacy" which she used to "go . . . [p]oo."T.39. Shanna testified that "[i]t moved" when it was insider her other privacy and that it felt "[i]cky." T.40. Shanna testified that before he put his privacy inside of her, he put Vaseline "[o]n [her] privacy" that she used to "pee." T.40. Shanna stated that "[a] little something "white" came out of petitioner's "privacy" where he "pee[d]" and he "[w]iped it off." T.40-41.

The sexual contact occurred while Shanna was in petitioner's bedroom. When shown a photograph of petitioner's bedroom, Shanna identified the "[g]rease" (hair relaxer) that he "put on [her] privacy." Shanna also identified a condom in the photograph, which she called a "safety" and said that her father "had it [sic] a lot in the bag." T.43-44, 45-46. He would "put them on . . .[h]is privacy" before he put his "privacy" in her "privacy." T.44. After petitioner did this to her, "he said don't tell" or else she would get a "[s]panking." T.44.

Shanna did "[n]ot really" remember when this happened; "[t]here wasn't no snow on the

ground" but it was cold outside and it was before she went to Florida with some family members. T.47.

The first person she told about what Campbell had done was her older brother (and petitioner's son), Chezere, while they were in Florida. Shanna then told her grandmother, Esther Campbell. A "[l]ittle" while later, the family returned to Buffalo. T.49.

Shanna testified that nobody else besides her father "ever touched [her] privacy." T.49.

### 2.     Shakia's Testimony

Shakia, petitioner's niece, was seven years-old at the time of the incident. She was staying at 60 Humason with her "Aunt Toot", Esther Penn. With difficulty, she testified about the alleged abuse, stating that her "Uncle Shannon" did something to her that she "didn't like." T.114. Shakia indicated that Campbell put his "ding-a-ling" "on [her] crotch." T.115. She said that "[i]t moved" and that while it was "inside [her] crotch" it felt "[b]ig." T.116. Before he put his "ding-a-ling" in her crotch, he put "[a] rubber" on. T.116-17. Shakia testified that petitioner also "touch[ed] the crotch that [she] go[es] poo out of" with his "ding-a-ling" but that he only put his "ding-a-ling" inside the "crotch" that she "go[es] pee out of." T.119-20, 121. Shakia testified that he put Vaseline "[i]n [her] crotch" before he put his "ding-a-ling" inside her.

Sometime after the incident with Campbell, Shakia's nine-year-old cousin Quentin "touch[ed] [her] in [her] crotch" the same way. T.122.

### 3.     Shamika's Testimony

Shamika, Shakia's older sister, testified that her Uncle Shannon touched her in a way that she "didn't like" while she was staying at 60 Humason. One night, Shamika was in Campbell's bedroom, sleeping. Campbell told her to wake up, but she "wouldn't wake up." T.147. "[T]hen

[Campbell] got on his hands and knees and told [her] please and he said . . . , ["]I'll give you a dollar if you do.["] T.147. Shamika again refused and Campbell said "please" and she "just flipped back to sleep." T.147.

Then Campbell touched her on her "legs and [her] privacy" that she used to "[p]ee." T.148. Campbell "rolled [his hands] around" on her privacy after putting "[l]otion" on her "privacy" and his "privacy." T.148-49, 153. He then touched her "privacy" with his "privacy." T.149. Campbell also put his "privacy" into her mouth and touched her "butt" with his "privacy." His "privacy" "[m]oved around" when he did these things. T.165-66. When his "privacy" went "inside [her] butt" it felt "[b]ad." T.151. Shamika testified that "[a] little" something "[w]hite" came out of her uncle's "privacy" and he wiped it off on her cousin's "baby doll covers." T.151.

Shamika testified that her uncle named "DC" also sexually abused her–he touched her with his "privacy" in her "privacy" that she went "pee out of" and her "privacy" that she went "poo out of[.]" T.154. This occurred after the incident with Campbell. T.155, 159-60.

### 4.     The Prosecution's Medical Expert

Dr. Jack Coyne testified that he performed physical examinations on the three girls on April 14, 1999, at the Child Advocacy Center in Buffalo. T.199. He explained that a physical examination of a patient includes four parts–the subjective reasons given by the patient as to why she was there, the objective findings by the doctor, the assessment, and the treatment plan. T.200-01. Without defense objection, Dr. Coyne testified from his report of Shakia's examination that she said,

[M]y uncle he put his weiner [sic] inside my crotch. He did it about four times and

he used a rubber except the last time when this white stuff all came out. This happened at my big grandma's house two times and my little grandma's house two times. It would hurt and I would cry.

T.203. Dr. Coyne testified that Shakia was a "toddler, not sexually developed" and that her "hymenal ring was irregular and there was in fact a gap from 5:30 to 7:30 and the posterior fourchet was intact." T.204. Dr. Coyne explained that "from 5:30 to 7:30 there was a lack of hymenal tissue" which was "caused by some penetrating trauma of some kind." T.205. In the rectal area there was a "tag at 12:00" which was "rather common and normal," and did not state that such a finding was necessarily indicative of abuse. T.205. Based on the subjective and objective portions of the examination, Dr. Coyne concluded that his physical findings with regard to Shakia were "most consistent with the child's history of abuse." T.206.

Dr. Coyne also examined Shanna. When asked why she was there, Shanna replied, "[B]ecause my daddy hurt me, he put Vaseline on my private and then he put his thing inside me. Once I was bleeding. He said he was doing this because Vanessa was not here[.]" T.207. When examining Shanna, Dr. Coyne found that there was "positive erythema, . . . meaning redness[.]" T.208. The hymen had an "irregular rim, and there was slight estrogenization and a cleft at 5:30[.]" T.208. Dr. Coyne testified that his physical findings were "most consistent with [Shanna's] history" of having been sexually abused by her father. T.208. The most important physical finding, in addition to the irregular hymenal ring, was the "cleft . . . at 5:30 that went down to the vaginal wall and that is . . .acquired . . . [b]y some penetrating trauma." T.208.

Finally, Dr. Coyne examined Shamika, who said, "Uncle Shannon made me suck his thing and lick it. He also put his thing or dick inside of me . . . He also puts cream and Vaseline on his dick. . . ." T.210. In his physical examination of Shamika, Dr. Coyne found that her hymen

had "mounds . . . but [a] smooth rim, [and] positive scar tissue from 6:30 to 5:30 posterior to the hymen." T.210. That indicated to him that the scar tissue of the posterior fourchet "was due to some trauma of some kind . . . but . . . there was not trauma of the hymenal tissue itself." T.210, 211.

On cross-examination, Dr. Coyne admitted that he could not state, "to a degree of medical certainty that it was a male sexual organ that inflicted this damage on th[e] [hymenal] tissue" of Shakia and Shanna. T.223, 231. The rectal tag found on Shakia was "more commonly a normal finding" and was "not conclusive medical proof of any type of anal penetration." T.226. Erythema is not necessarily associated with sexual abuse. Dr. Coyne admitted that the irregularity of Shanna's hymenal tissue was less noticeable than it was on Shakia. T.227-28. He confirmed that he did not notice any gaps, openings or irregularities in the surface of Shamika's hymenal tissue. T.228. He had no way of stating how old the scar tissue on Shamika was, except that the injury had not happened within the two or three days prior to his exam. T.229. Defense counsel elicited from Dr. Coyne that his objective physical findings alone were "consistent with some penetrating trauma to these two children but [he] couldn't tell you from what." T.233.

### B.    The Defense Case

The theory of the defense was that petitioner "was falsely accused, that these childen have lied, told lies, made up stories regarding the sexual abuse. . . ." Prior to beginning to present the defense case, trial counsel made an offer of proof regarding proposed witness, Esther Campbell (petitioner's adoptive mother). Defense counsel stated that he sought to elicit from Campbell, as well as from Campbell's mother, that in 1994 and 1995, the mother of Shamika and Shakia, Alicia Penn, "falsely accused not only . . . Campbell of engaging in improper sexual behavior

with Alicia Penn but also falsely accused . . . [Campbell's] mother of improper sexual conduct . . . ." Trial counsel did not specify against whom the improper sexual conduct by Mrs. Campbell allegedly occurred. Counsel indicating that this matter "was addressed and litigated in a Family Court context . . . ." T.236. Further, defense counsel stated, the result was that custody was awarded to petitioner "because the courts found there was no merit to these false allegations of sexual abuse." T.236. Counsel explained that since that time the family had been "divided into a faction [sic] in which Alicia Penn [Shakia and Shamika's mother] and Esther Penn . . . sided with [Campbell's] estranged wife . . . Stephanie Campbell [Shanna's mother] who resides in Rochester . . . ." T.236.  According to trial counsel, the family was going to be re-locating to Florida and the sexual abuse allegations were "the last gasp effort on the part of Alicia Penn and Esther Penn" to prevent the children from moving to Florida with Campbell and his mother. T.237.

The trial court noted that there had been no proof that Shanna's biological mother, Stephanie Campbell, had any contact with her daughter before the incident to put her up to fabricating charges against petitioner, and no proof of contact between Stephanie Campbell and Alicia Penn, the biological mother of Shamika and Shakia. T.239. Thus, the trial court noted, there were "no facts" on which to base an allegation of wrongdoing. T.239-40, T.241. However, the trial court stated that he "would go on to allow [counsel] to, and will think about the relationships back and forth . . . ." T.240. The trial court stated counsel's argument was "only based upon well, [Campbell] got custody, therefore . . . the judge must have found that they were lying . . ." during the family court proceeding. T.240.

Trial counsel then moved, pursuant to New York Criminal Procedure Law ("C.P.L.") §

290.10, to dismiss counts three, four, and five of the indictment alleging first degree sodomy because there was "absolutely no testimony" from Shakia that petitioner "anally, orally or vaginally sodomized" her. T.241-42. The prosecutor conceded this, and those counts accordingly were dismissed. T.242-43.

### 1.    Petitioner's Testimony

Campbell testified that he was living at 60 Humason at the time in question with his adoptive mother and father, Esther and Tom Campbell. Campbell testified his mother, his daughter, and his niece Shakia left for Florida in the middle of January and returned on April 12th or April 13th. T.252-54. According to Campbell, he did not get along with his daughter's biological mother, or with Alicia Penn or Esther Penn. Campbell testified that in January 1999, he moved out of his bedroom at 60 Humason so that Alicia Penn and her children could move in. T.258.  He claimed on cross-examination that Shakia was not staying at 60 Humason until she came back from Florida in April. T.275. [Confronted with his statement to the police. T.276-77.] He testified that he did not reside in that upstairs bedroom room any time thereafter. T.258. Campbell stated that he did not recognize the condoms pictured in the photographs of the bedroom in question and stated they were not of the type he used. T.260-62, T.284-85. Campbell testified that during the time in question, he spent three to five nights a week with Janet Jenkins, with whom he had two children.[2] At the time, he also was having a physical relationship with a woman named Vanessa Schrader who lived in Williamsville. T.263, 290-91. Campbell testified that he left his children with his mother while he was gone.

---

[2]    Campbell also had two children with a woman named Felicia McMillan, and a son whose mother was not identified in the record. T.266. Campbell thus had seven (7) children in total.

Campbell suggested, as he had done in his previous statements to the police, that the children had been manipulated by certain family members into accusing him of sexual abuse. According to Campbell, this was done in response to earlier custody proceedings that had been resolved in Campbell's favor. *See* T.264-65. He categorically denied committing any of the acts described by the complainants. T.264-65.

### 2.    Petitioner's Sister's Testimony

Esther Battiese ("Battiese") was Esther Campbell's biological daughter and petitioner's adoptive sister. Battiese testified that she lived at 845 Prospect with her daughter, Esther Penn. She had another daughter named Alicia Penn. T.320. On January 11, 1999, Battiese left the house at 60 Humason to go live in Jacksonville, Florida. T.321-22. She returned to Buffalo on April 13, 1999. T.322. According to Battiese, Shakia was in Florida during the time she (Battiese) was there. T.322.

### 3.    Petitioner's Adoptive Mother's Testimony

Esther Campbell's court-assigned attorney appeared in court and informed the parties that he had advised his client not to testify based on his understanding that she was "in fact a target of a criminal investigation in regards to certain aspects of this case." T.325. Trial counsel then reiterated his proffer regarding her testimony–namely, that Shanna and Shakia were with her in Florida from January to April and that some of the items depicted in the photograph of the bedroom (e.g., the hair relaxer allegedly used as lubricant on the children) were actually purchased by her in Florida; and that Shanna slept in the same bed as her, not in the bedroom that Campbell used. T.326-27. Mrs. Campbell's counsel stated that he would advise her to invoke her Fifth Amendment rights with regard to every question asked. T.328. Consequently, trial counsel

declined to put her on the stand at all.

Counsel then asserted that he believed that the "allegations of [Mrs. Campbell's] tampering with these witnesses [we]re false" and "a ploy on the part of the District Attorney's Officer to preclude [him] from putting on exculpatory evidence." T.329. The prosecutor reminded the court that even before the trial commenced, she had informed defense counsel about the potential charges of witness tampering against Mrs. Campbell. T.331. The trial court agreed with the prosecutor, noting that well before defense counsel had communicated his intention to call petitioner's mother, he knew that she was possibly subject to criminal charges. T.333.

Proofs were closed at this point. After hearing argument from the parties, the trial court declined to charge the jury with the lesser included offense of attempted first degree rape, as defense counsel had requested. The jury returned a verdict convicting Campbell on all of the charges submitted to it. T.444-46.

On May 31, 2000, Campbell appeared in court with new counsel, who had moved pursuant to C.P.L. § 330.30 to set aside the verdict on the basis that the prosecutor made improper comments during summation and "the prosecutor's interference with Esther Campbell . . . who would have testified . . . mainly attacking the various pictures [of petitioner's bedroom shown] to the children." S.2-3; *see also* S.3-5.[3] Defense counsel argued that petitioner was wrongly deprived of his right to call witnesses and noted Mrs. Campbell never actually was indicted by the district attorney's office on charges of witness-tampering with regard to her allegedly having intimidated one of petitioner's nieces by threatening to punish her if she

---

[3]     Citations to "S.___" refer to the transcript of the sentencing hearing held on May 31, 2000.

testified against her petitioner. S.4. The prosecutor opposed the motion, reiterating her arguments made during the trial with regard to the issue of Mrs. Campbell and contending that her remarks were "fair comment" on the evidence and responsive to defense counsel's summation. The trial judge ruled from the bench and denied the motion, essentially for the same reasons urged by the prosecutor. S.10-11.

Before being sentenced, Campbell made a statement maintaining his innocence and professing that his trial was a sham. He informed the court, "[T]oday I still stand before you an innocent man. Unfortunately the jury didn't know actually the law. . . ." S.12-13. The trial judge sentenced Campbell to seven (7) years determinate with regard to count one (first degree sexual abuse); twenty-five (25) years determinate with regard to count two (first degree rape); one (1) year determinate with regard to count six (endangering the welfare of a child); twenty-five (25) years determinate with regard to count seven (first degree rape); twenty-five years determinate with regard to count eight (first degree sodomy); twenty-five (25) years determinate with regard to count nine (first degree sodomy); one (1) year determinate with regard to count ten (endangering the welfare of a child); twenty-five (25) years determinate with regard to count eleven (first degree rape); twenty-five (25) years determinate with regard to count twelve (first degree sodomy); one and one-third to four (1⅓ to 4) years on count thirteen (incest); and one year determinate on count fourteen (endangering the welfare of a child). The sentences under counts one, two and six, were set to run concurrently with each other but consecutive to all other sentences. Those imposed under counts seven, eight, nine and ten were concurrent with each other but consecutive the remaining sentences. Finally, the sentences for counts eleven, twelve, thirteen and fourteen were concurrent to each other but consecutive to the other terms. The

longest sentence in each of the three groups of concurrent sentences was twenty-five (25) years, making Campbell's aggregate sentence seventy-five (75) years. The judge indicated that he knew, by operation of law, the maximum term would be deemed fifty (50) years. S.16.[4] However, the trial court indicated that a lengthy period of incarceration was necessary based on the pre-sentence investigation and the results of the psychiatric evaluation of petitioner.

Represented by new counsel on direct appeal, Campbell appealed his conviction to the Appellate Division, Fourth Department, of New York State Supreme Court. Appellate counsel raised the following six arguments: the court improperly permitted three child witnesses to be sworn; improperly prevented the petitioner from cross-examining a witness about a letter having to do with where the petitioner's daughter wanted to reside as a result of his incarceration; impermissibly allowed hearsay testimony from a child victim's brother that bolstered a victim's testimony; that the court erred by allowing a physician to testify to what the children told him during each child's examination; erred by disallowing defense evidence that one child's mother had previously made a false accusation of improper sexual conduct against the petitioner and his mother; and that the sentence was illegal and harsh.

Campbell filed a *pro se* supplemental appellate brief, presenting the following issues: trial

---

[4] When a "defendant is serving two or more determinate sentences of imprisonment which run consecutively, the terms of the determinate sentences are added to arrive at an aggregate maximum term of imprisonment, provided, however, that the aggregate maximum term of imprisonment shall be subject to the limitations set forth in paragraphs (e) and (f) of this subdivision, where applicable." N.Y. PENAL LAW § 70.30(1)(c). Section 70.30(1)(e) applies in Campbell's case, and provides that the "aggregate maximum term of consecutive sentences, imposed for the conviction of three or more violent felony offenses . . . and one of which is a class B violent felony offense, shall, if it exceeds fifty years, be deemed to be fifty years." N.Y. PENAL LAW § 70.30(1)(e)(vi). The longest consecutive sentences imposed all were for violent felony class B offenses. *See* N.Y. PENAL LAW § 70.02(1)(a) (providing that first degree rape as defined in P.L. § 130.35, and first degree criminal sexual act (sodomy) as defined in P.L. § 130.50, are considered violent felony offenses); N.Y. PENAL LAW § 130.35 (first degree rape is a class B felony); N.Y. PENAL LAW § 130.50 (first degree criminal sexual act (sodomy) is a class B felony).

counsel was ineffective for failing to preserve certain issues; the trial court made comments and issued rulings which denied him a fair trial; the prosecutor committed misconduct by threatening to prosecute defense witnesses (petitioner's mother and petitioner's sister) and making improper comments during summation; and the indictment was jurisdictionally defective because grand jury witnesses should not have been permitted to give sworn testimony and because the dates contained in the indictment did not adequately reflect the testimony in the grand jury and the felony hearing. Campbell also repeated some of appellate counsel's arguments. The prosecution filed a reply brief, to which petitioner responded with a sur-reply. However, it is unclear whether Campbell was permitted to even file such a pleading. In unanimously affirming the judgment of conviction, *People v. Campbell*, 286 A.D.2d 979 (App. Div. 4th Dept. 2001), the Appellate Division declined to address the following issues because they had not been preserved for its review: admissibility of statements that the children made to the examining physician; a claim of bolstering; a claim that the court and the prosecutor made improper comments during the trial; and an argument that the indictment was jurisdictionally defective.  After considering the merits of Campbell's ineffective assistance of counsel, the Appellate Division ruled that he had received constitutionally meaningful representation. It also found that each child witness was competent to testify; and that the testimony of a victim's brother was not hearsay. The Appellate Division declined to modify the sentence, and concluded that Campbell's "remaining issues were without merit." On December 21, 2001, the Appellate Division denied Campbell's *pro se* motion for reargument.

On behalf of Campbell, appellate counsel filed a discretionary leave application with the New York Court of Appeals, specifically requesting review of the following three issues: (1) the

seventy-five year sentence violated the defendant's constitutional rights; (2) trial counsel was ineffective because he failed to preserve a challenge to the admission of the physician's testimony about what the children had told him; failed to object to the testimonial capacity of the child witnesses; and failed to call the petitioner's mother as a witness; and (3) the trial court erred in disallowing testimony that the mother of two of the victims had falsely accused the petitioner and his mother of improper sexual conduct in an earlier custody proceeding. On January 22, 2002, the Court of Appeals denied leave. *People v. Campbell*, 97 N.Y.2d 702 (N.Y. 2002).

The petitioner first moved to vacate the judgment on or about January 10, 2002, and filed a supporting affidavit dated January 29, 2002. The People filed an opposing affidavit dated May 2, 2002, and the petitioner filed a reply affidavit dated May 31, 2002. The petitioner presented a number of issues, including a claim that trial counsel had been ineffective. The court denied the motion on June 11, 2002, concluding that sufficient facts appeared in the record to have permitted direct review of his claim that counsel had been ineffective. *See* N.Y. CRIM. PROC. LAW § 440.10(2)(c). In any event, the trial court concluded, Campbell had received the effective assistance of counsel. Furthermore, the trial court observed, Campbell had raised many of the same issues in his direct appeal, but had failed to raise others despite there being sufficient facts of the record. Accordingly, the trial court denied the motion on procedural grounds, citing C.P.L. § 440.10(2)(a) and C.P.L. § 440.10(2)(c). Moreover, the trial court concluded, petitioner's additional allegations were conclusory and unsupported by evidence. Thus, it denied the balance of the motion by citing to C.P.L. § 440.30(4)(b) and (d).

Campbell sought leave to appeal on July 2, 2002; however, in his leave request, he addressed only the ineffectiveness issue, specifically arguing that trial counsel failed to obtain

evidence that purportedly would have exonerated him and that trial counsel did not properly handle inconsistent statements made by certain witnesses. The Appellate Division denied leave to appeal the denial of the C.P.L. § 440.10 motion on December 16, 2002.

Campbell filed a second C.P.L. § 440.10 motion to vacate the judgment on October 21, 2003. Purporting to rely on new decisional law, Campbell claimed that his second motion presented novel legal issues concerning the pay structure of New York State's assigned counsel program. He also included many issues that he had already raised in his first C.P.L. § 440.10 motion, in his briefs on direct appeal, or both. These included the following: (1) the competency of the child witnesses to be sworn (direct appeal; first C.P.L. § 440.10 motion); (2) the range of dates of the various crimes rendered the indictment defective (direct appeal, C.P.L. § 440.10 motion); (3) trial counsel's purported lack of investigation regarding medical evidence (C.P.L. § 440.10 motion); (4) trial counsel's failure to make objections and preserve various appellate issues (C.P.L. § 440.10 motion, direct appeal); and (5). prosecutorial misconduct in the grand jury (direct appeal). Campbell also asserted that trial counsel failed to develop evidence regarding the children's residences, but he did not explain why that was significant, how he was prejudiced, or why he did not assert this purported deficiency in his earlier motion.

The prosecutor opposed the motion on December 30, 2003. On January 29, 2004, the trial court denied relief, finding that to the extent that the ineffectiveness claim was based on trial counsel's failure to object, it was based on matters of record and had been decided on direct appeal. The trial court further agreed that *Eze v. Senkowski*, 321 F.3d 110 (2d Cir. 2000), was not new law, and denied Campbell's ineffective assistance claims premised on that case for procedural reasons  pursuant to C.P.L. 440.10(2)(a). The trial court concluded that the indictment

was not defective, and that there was no prosecutorial misconduct relating to the time frames set out in the indictment. Dismissed as procedurally barred were Campbell's claims that the assigned counsel program negatively affected his attorney's performance, and that New York's state's preservation requirement is itself unconstitutional. *See* N.Y. Crim. Proc. Law § 440.10(3)(a). The court also denied on procedural grounds the claim that the prosecutor had threatened a defense witness because Campbell had previously raised that issue in a motion to set aside the verdict pursuant to C.P.L. § 330.30. *See* N.Y. CRIM. PROC. LAW §§ 440.10(2)(c); 440.10(3)(b).

The petitioner sought discretionary leave to appeal, presenting the court with three issues: misconduct relating to the range of dates in the indictment; ineffective counsel; and constitutional deficiencies in the assigned counsel program. He also argued that the preservation requirement placed an undue burden on indigent defendants, and that C.P.L. Article 440 should be available to preserve appealable issues. The Appellate Division, Fourth Department, denied leave on March 29, 2004. Campbell sought reconsideration of the trial court's denial of his second motion, because the January 29, 2004, decision did not consider the People's affidavit dated January 23, 2004, or the petitioner's affidavit dated January 28, 2004. In a decision and order dated April 6, 2004, the trial court denied the petitioner's motion after considering those affidavits. The trial judge concluded that scientific articles that the petitioner had submitted did not undermine medical testimony from the prosecution's witnesses and failed to support his ineffectiveness claim. On cross-examination, the prosecution's medical expert acknowledged that the hymenal injury to two children could have been caused by something other than a penis.

By affidavit dated April 29, 2004, the petitioner sought leave to appeal the denial of his reconsideration motion. On the issue of counsel's allegedly deficient pre-trial preparation, he

argued that the Second Circuit's decision in *Eze v.Senkowski*, 321 F.3d 110 (2d Cir. 2000), constitutionally obligated defense counsel to retain an expert witness because the case involved allegations of sexual abuse against child victims. Petitioner also addressed counsel's failure to object to the physician's hearsay testimony reading from his examination reports about what the children had told him during their exams. Campbell claimed that he was entitled to a hearing to explore counsel's motivations, and to determine whether counsel's decisions were influenced by what he considered the unconstitutional pay structure of the assigned counsel program. Finally, he addressed the prosecutor's actions in the context of the time frames for the indicted crimes. On May 24, 2004, the Appellate Division denied the petitioner's leave application.

This habeas petition followed. *See* Petition ("Pet.") (Dkt. #1). Before respondent answered the petition, Campbell submitted a pleading titled "Petitioner's Affidavit" ("Pet'r Aff.") (Dkt. #4). Respondent, in its answer (Dkt. #9) and memorandum of law (Dkt. #10) in opposition to the petition, asserts the defense of non-exhaustion with regard to a number of Campbell's claims. Respondent also argues that none of petitioner's claims have any merit.

For the reasons that follow, the request for a writ of habeas corpus is denied and the petition is dismissed.

## III.    Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant a writ of habeas corpus to a state prisoner on a claim that was "adjudicated on the merits" in state court only if it concludes that the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a

decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d); *see also Williams v. Taylor*, 372 U.S. 362, 375-76 (2000). An "adjudication on the merits" is a substantive, rather than a procedural, resolution of a federal claim. *Sellan v. Kuhlman*, 261 F.3d 303, 313 (2d Cir. 2000).

Federal habeas review is available for a State prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Errors of state law are not subject to federal habeas review. *See, e.g.*, *Estelle v McGuire*, 502 U.S. 62, 67-68 (1991); *Cupp v Naughten*, 414 U.S. 141, 146 (1970).

## IV.    Analysis of the Petition

### A.    Claims of Ineffective Assistance of Trial Counsel – Petition (Dkt. #1)

#### 1.    Legal Standard Applicable to Ineffective Assistance Claims

To establish that he was deprived of his Sixth Amendment right to the effective assistance of trial counsel, a petitioner must show that (1) his attorney's performance was deficient, and that (2) this deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Deficiency is measured by an objective standard of reasonableness, and prejudice is demonstrated by a showing of a "reasonable probability" that, but for counsel's unprofessional errors, the result of the trial would have been different. *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding." *Id.* To succeed, petitioner challenging counsel's representation must overcome a "strong presumption that [his attorney's] conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. A reviewing court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of

counsel's conduct," *id.*, and may not second-guess defense counsel's strategy. *Id.* at 690. Here, Campbell has failed to demonstrate that his counsel's conduct was deficient within the meaning of *Strickland*, and that, but for the deficiency, the result of his trial would likely have been different.

### 2.    Alleged Bases of Counsel's Ineffectiveness

Campbell has assailed trial counsel's performance on myriad grounds. First, on the form habeas petition (Dkt. #1), Campbell has stated as follows:

> Ground one:   THE DEFENDANT WAS DENIED THE EFFECTIVE
> ASSISTANCE OF COUNSEL. Trail [sic] counsel [1] failed to hire
> expert to evaluate evidence; [2] failed to ascertain addresses of the
> complainants during the period alleged; [3] failed to make
> appropriate objections to the testimonial capacity of the witness,
> the [4] bolstering evidence of the physician and other matters
> related in the attachment: background facts.

Pet. at 7, ¶22A (Dkt. #1). I note that in his *pro se* brief on direct appeal, Campbell essentially raised same claims as #3 and #4 in Ground One, above, arguing that trial counsel's failure to register the proper objections at trial deprived him of due process by forcing him to present unpreserved  appellate issues. He complained that trial counsel did not object to a lack of specificity in the indictment as to the time frames when the incidents allegedly occurred; did not object to the prosecution's medical expert's bolstering by testifying about what the children had said to him during their physical examinations; and did not object to the trial court's decision permitting the children to be sworn as witnesses. *See* Petitioner's *Pro Se* Supplemental Brief at 23-28, submitted as Respondent's Exhibit ("Resp't Ex.") A in the Appendix of State Court Records. The Appellate Division did not address the instances of ineffectiveness specifically, but ruled generally that petitioner received meaningful representation. Allegations #1 and #2 were

raised in various of Campbell's motion to vacate the judgment pursuant to C.P.L. § 440.10. The

trial court rejected them as without merit, and also because they could have been raised on direct

appeal. For the reasons discussed below, none of the alleged errors of trial counsel, taken singly

or together, amount to constitutionally ineffective representation.

### a.      Failure to object to swearing-in of child complainants

This claim premised on trial counsel's alleged failure to object has been mooted because

the Appellate Division *did* rule on petitioner's argument that the trial court erred in swearing the

child complainants, finding that each child was properly sworn. As respondent notes, this fatally

undermines petitioner's claim based on trial counsel's failure to object to the trial court's ruling:

because the appellate court considered the issue on the merits, notwithstanding the lack of

preservation, petitioner cannot demonstrate that he was prejudiced by counsel's failure to object.

### b.      Failure to object to hearsay by treating physician

I turn next to the alleged ineffectiveness based on the failure to object to certain hearsay

testimony by Dr. Coyne, the physician who testified for the prosecution. Dr. Coyne testified that

his examination included a subjective portion, which consisted of his attempt to elicit from the

child the reason why she was there. *See* T.200, 203, 207, 209-10. During his direct testimony, Dr.

Coyne repeated what the children had told him during the course of his physical examination of

them. Trial counsel did not object to this testimony, which Campbell complains "improperly

bolstered the testimony of the three victims." Petitioner's Appellate Brief ("Pet'r App. Br.") at

14, Resp't Ex. A. Respondent has argued that trial counsel had a reasonable strategic basis in

declining to object; a major aspect of trial counsel's strategy was to attack the credibility of the

child complainants and their susceptibility to coercion by other family members and to point out

-21-

that the child complainants told many different people about the abuse, which suggested that it was choreographed by manipulative adult family members.

I need not decide whether trial counsel's failure object to this hearsay evidence lacked a strategic basis and was objectively unreasonable. Any error occasioned by the admission of the hearsay evidence offered by Dr. Coyne was harmless in light of the overwhelming evidence of Campbell's guilt. Moreover, by the time Dr. Coyne testified, all three complainants had already testified in detail and without significant impeachment regarding the sexual contact. And, trial counsel ultimately elicited from the complainants that each had spoken to various people about how Campbell allegedly had molested them; Dr. Coyne was not the first individual to whom they had spoken.  *See People v. Clark*,  222 A.D.2d 446, 446, 634 N.Y.S.2d 714, 714 (App. Div. 2d Dept. 1995) ("Although it was error to allow the treating doctor, during redirect examination, to recite verbatim the victim's complaints to him, the error was harmless, in light of the overwhelming evidence of guilt and the fact that the defense counsel had already adduced testimony on cross-examination that the victim had complained of sexual abuse and rape[.]") (citing, *inter alia*, *People v. Knapp*, 139 A.D.2d 931, 932, 527 N.Y.S.2d 914, 915 (App. Div. 4th Dept. 1988) ("The court, however, erred in admitting the details of what the victim said to the doctor who examined her. These statements followed extensive examination and questioning and occurred several hours after the incident. Thus, the statements to the doctor could not be admitted as either a spontaneous declaration, or as a prompt complaint. Hearsay testimony in the nature of a prompt complaint is admissible only to bolster the victim's credibility in the face of a claim of recent fabrication. The admission of the doctor's statements, however, was harmless error. The evidence of guilt was overwhelming and inasmuch as the victim's statements had already been

properly admitted through her mother, "there is no significant probability . . . that the jury would

have acquitted the defendant had it not been for the error.") (quoting *People v. Crimmins*, 36

N.Y.2d 230, 242 (N.Y. 1975) (internal citations omitted)). There is thus is no reasonable

probability that the jury would have acquitted Campbell of any of the charges had trial counsel

objected, meaning that Campbell cannot satisfy the "prejudice" prong of *Strickland*.

c.  <b>Failure to retain medical expert witness</b>

Campbell contends, as he did in his motion to vacate the judgment pursuant to C.P.L. §

440.10, that trial counsel unreasonably  failed to hire an expert witness to counter the

prosecution's expert testimony regarding the medical evidence.  He chiefly cites *Eze v.*

*Senkowski*, 321 F.3d 110 (2d Cir. 2000), decided after his conviction became final. He also has

submitted two articles reporting the results of empirical studies of prepubertal females who had

never been sexually abused, alleged to be helpful to his position. Respondent argues that

Campbell's reliance upon *Eze* is misplaced, pointing out that it does not stand for the proposition

that counsel must present medical evidence in every case of child sexual abuse. Respondent also

contends that the articles submitted do not support petitioner's position.

When Campbell presented this contention in the context of his request for reconsideration

of the denial of his 2003 C.P.L. § 440.10 motion, the trial court reviewed the articles in relation

to the objective findings in the prosecution's expert witness' testimony. The trial court  found

that the articles did "not undermine the physician's conclusion that the hymenal membrane of (2)

[sic] of the victims was damaged by penetrating trauma." County Court Order Dated April 6,

2004 Denying C.P.L. § 440.10 Motion at 2.[5] Furthermore, the trial court found that defense

---

[5]  This document was submitted as part of the unbound state court records.

counsel successfully elicited from the physician on cross-examination that the hymenal membrane could have been damaged by an object other than a penis.

Campbell contends, as he did in support of his C.P.L. § 440.10 motion, that trial counsel was derelict in failing to retain an expert witness to review the medical evidence. *See*, *e.g.*, Petitioner's Reply Affidavit dated 1/28/04 in Support of C.P.L. § 440.10 Motion, ¶¶15 *et seq.*[6] However, Campbell has never obtained a supporting affidavit from a physician demonstrating the existence of an expert opinion countering that offered by Dr. Coyne. *See Murden v. Artuz*, 253 F. Supp.2d 376, 389 (E.D.N.Y. 2001) (dismissing claim of ineffective assistance of trial counsel based on the failure to retain an expert witness where petitioner failed to introduce affidavit from potential expert witness). In support of this contention, Campbell relies only upon *Eze v. Senkowski*, 321 F.3d 110, and several journal articles, copies of which he submitted to the C.P.L. § 440.10 motion court. *See* Petition (Dkt. #1); Exhibits E & F to Petitioner's Reply Affidavit dated 1/28/04 in Support of C.P.L. § 440.10 Motion.

As respondent points out, neither the Second Circuit nor the Supreme Court has ever ruled that in every case involving allegations of child sexual abuse, trial counsel is constitutionally obligated to present medical evidence through an expert witness. *See* Resp't Mem. at 15-16 (Dkt. #10); *see also Gersten v. Senkowski*, 426 F.3d 588, 609 (2d Cir. 2005) ("As the district court correctly noted, '[t]here is no *per se* rule that requires trial attorneys to seek out an expert.' We do not . . . mean to hold that expert consultation is always necessary in order to provide effective assistance of counsel in child sexual abuse cases . . . .") (internal quotation omitted; alteration in original).

---

[6]     This document was submitted by respondent as part of the unbound state court records.

-24-

*Eze v. Senkowski*, 321 F.3d at 110, upon which Campbell principally relies, is distinguishable. In *Eze*, the two female victims were the petitioner's nieces. According to the prosecution, the girls were subjected to brutal sexual abuse by various perpetrators acting alone and at times in concert–their father; a woman who apparently was the father's girlfriend; and petitioner, who was the girls' uncle. The *Eze* panel identified eight deficiencies in counsel's representation which required remanding the case for an evidentiary hearing in district court. Of particular concern to the Second Circuit was trial counsel's failure to introduce a past medical record of one of the victim's, evidence "crucial" to demonstrating that the physical condition of her hymen pre-dated the alleged abuse. *See Eze*, 321 F.3d at 126-27. In addition to this "significant dereliction," the Second Circuit found that trial counsel ignored a key inconsistency in the victim's testimony that would have severely undercut the children's credibility–namely, that during a social worker's interview, both victims said that they wanted to see the petitioner, their uncle, because they wanted to ask them if he knew about what *their father* did to them. The Second Circuit found that this was significant, potentially exculpatory evidence, and that the failure to introduce this compounded the error that had been caused when the prosecution's medical expert improperly vouched for the two girls by testifying that "[i]n the medical literature . . . statements made by the child regarding their own sexual abuse have the most weight." *Id.* at 133.

Here, in contrast, Campbell has not demonstrated that there were any previous medical records containing additional potentially exculpatory or impeaching evidence, such as existed in *Eze.* Significantly, there was nothing whatever to indicate that Shanna's physical condition pre-existed the alleged abuse. With regard to Shakia, defense counsel elicited that she recalled her

nine-year-old cousin Quentin "humping" her. Shamika's medical findings were the most inconclusive as only scar tissue was found, but defense counsel elicited from that she also had been raped and sodomized by her "uncle DC". Thus, trial counsel used the available evidence to advance petitioner's defense theory that someone else was responsible for the alleged abuse. Furthermore, unlike the prosecution's expert in *Eze*, Dr. Coyne did not testify that the medical literature directed that the child victim's subjective statements carry the most weight in determining whether there has been sexual abuse. *Compare with Eze*, 321 F.3 at 133.[7]

Campbell's case presents further dissimilarities to *Eze*, where trial counsel failed to challenge the prosecution's expert's opinion regarding the significance of the enlarged hymenal openings found in the two victims–a conclusion that petitioner Eze was able to demonstrate had been subject to much criticism by other physicians. *Eze*, 321 F.3d at 127-28. Here, in contrast, none of the three children had an enlarged hymenal opening. Rather, Dr. Coyne found, Shanna and Shakia had a gap or cleft in the hymenal ring that "was right down to the vaginal wall." One gap occurred at the 5:30 to 7:30 position; the other at 5:30. It was these findings–which were indicative of penetrating trauma to the child's genitals–that were most significant to Dr. Coyne.

In particular, Campbell has not asserted that an expert could or would have testified that the hymenal clefts or gaps found in Shakia and Shanna occurs naturally in children or can result from something other than penetrating trauma. In fact, the articles submitted by Campbell actually contradict any such assertion. One article reported that such clefts rarely exist naturally

---

[7]   Ironically, two of the medical journal articles submitted by Campbell do not support his position, since they actually conclude that the child's subjective complaints are a critical part of assessing whether or not sexual abuse has occurred and that a diagnosis generally should not be made upon the objective medical findings alone. However, Dr. Coyne did not testify regarding these or any other similar studies.

in a child's hymenal ring; when they do, it is above the 3 o'clock to 9 o'clock midline. No

hymenal clefts were found between the 4 o'clock and 8 o'clock positions in infant girls up to the

age of one year who had not been sexually abused. Berenson, A.B., *Appearance of the Hymen at*

*Birth and One Year of Age: a Longitudinal Study*, 91 J. PEDIATRICS 820-25 (1993). As noted

above, the clefts found in Shanna and Shakia were between the 5:30 and 7:30 position. In another

article submitted by Campbell, the same doctor documented the genital anatomy of 211 girls,

between the ages of one month and seven years, who had no history of having been sexually

abused. Berenson, A.B., *et al.*, *Appearance of the Hymen in Prepubertal Girls*, 89 J. PEDIATRICS

387, 394 (1992). Although the researchers occasionally found hymenal notches or clefts on the

top and sides of the hymenal rim (i.e., above the 3 o'clock to 9 o'clock midline) in the study

subjects, they did not find any notches in the lower half of the hymenal rim. *See also* Gardner,

J.J., *Descriptive study of genital variation in healthy, nonabused, premenarchal girls*, 120 J.

PEDIATRICS, 251, 255 (1992) ("Notches of the hymen [defined as perpendicular disruptions of

the hymenal skin penetrating the vaginal mucosa] were rare, occurring in only two girls.")

(internal quotation and footnote omitted).

As respondent notes, even without the assistance of a medical expert, defense counsel for

Campbell obtained a concession from Dr. Coyne that his objective physical findings was

"consistent with some penetrating trauma to [Shanna and Shakia] but [he] couldn't tell you from

what." T.233. Trial counsel elicited from Dr. Coyne that he could not state to a reasonable degree

of medical certainty that any of the claimants had been sexually abused.

### d.    Failure to obtain addresses of child victims

Campbell also faults trial counsel for failing to obtain the addresses of the child

complainants. This appears to be a reiteration of his argument that the abuse could not have occurred because Shanna and Shakia were in Florida. Defense counsel did pursue this avenue through his questioning of the defense witnesses about who was living at 60 Humason and when. However, petitioner's allegations about what trial counsel allegedly would have discovered about the children's addresses was belied to a large extent by the defense witnesses' testimony. Petitioner, who was staying at 60 Humason throughout the time during which the offenses were alleged to have occurred, could not establish that he lacked access to Shanna and Shakia before they went to Florida. There is no question that petitioner had custody of Shanna and she resided at 60 Humason. Petitioner attempts to create an issue about when Shakia and her mother and aunt moved into 60 Humason and who was using which bedroom However, these arguments are a smokescreen; the fact remains that Campbell had plenty of unlimited access to all three of the victims, two of whom (Shanna and Shakia) testified that the abuse occurred before the family trip to Florida. Moreover, Shamika stayed in Buffalo at 60 Humason while the family was gone, giving Campbell many opportunities to be alone with her. Trial counsel did the best he could with a set of facts that did not in any way favor an alibi defense.

### 3.   Other Bases of Alleged Ineffectiveness

Campbell has raised additional grounds of alleged ineffectiveness on trial counsel's part in his Affidavit (Dkt. #4). Essentially, Campbell argues that the statutory pay rate his assigned counsel received inevitably resulted in low-quality representation, stating that he was

> denied of the effective assistance of counsel, due process, and equal protection of law by the unconstitutional pay-structure of the assigned-counsel program, as it existed at the time of his representation, as it affected the performance of his assigned counsel.

Pet'r Aff., ¶212 (Dkt. #4). This claim is specious. The only basis for Campbell's claim is his

personal dissatisfaction with the outcome of his trial–not any objective evidence that trial counsel

performed in a sub-par manner because he was paid less than his typical hourly rate under the

County's assigned counsel program for indigent defendants. To the contrary, Campbell's trial

counsel zealously represented his interests and performed competently at pre-trial and trial

proceedings. This claim is accordingly dismissed as lacking in a factual basis.

Next, Campbell asserts a number of additional flaws in trial counsel's performance,

arguing that his attorney

> failed to act as counsel guaranteed by the constitution when he [1] failed to
> investigate into the truthfullness [sic] of the indictment, [2] ascertain the
> residences of the victims, [3] advise the defendant relative to exercising the right
> to testify in the grand jury, [4] failed to raise constitutional challenges to the
> questioning and arrest of the defendant, [5] failed to move for a trial order of
> dismissal directed at specific evidentiary deficiencies, [6] failed to make demands
> for *Rosario* material, or other issues to protect the record for appellate review.

Pet'r Aff., ¶212; *see also* ¶211 (Dkt. #4). Campbell has failed to substantiate any of these

allegations of error. First, trial counsel demanded and received from the prosecutor a bill of

particulars amplifying the substance of the offenses charged in the indictment. Trial counsel also

moved for inspection and disclosure of the grand jury minutes; this was denied by the trial court,

which found that the evidence submitted to the grand jury was legally sufficient to support the

indictment. Second, the contention regarding counsel's alleged failure to ascertain the addresses

of the child complainants' residences was addressed above in this Decision and Order.  Third,

even assuming the truth of his unsupported allegation that trial counsel failed to advise him of his

New York state statutory right to testify before the grand jury, Campbell cannot demonstrate that

he was prejudiced thereby. This is because the petit jury found him guilty beyond a reasonable

doubt, which is a higher standard of proof than the "probable cause" standard employed by the grand jury in determining whether to indict. Fourth, Campbell has wholly failed to identify the "constitutional challenges to [his] questioning and arrest" that trial counsel purportedly should have made, and accordingly cannot demonstrate that he was prejudiced by trial counsel's failure to make motions, the substance of which is entirely speculative. Fifth, Campbell has not identified the "specific evidentiary deficiencies" in the prosecution's case against which he believes a trial order of dismissal would have been successful and, again, has failed to demonstrate prejudice. Trial counsel did succeed in obtaining dismissal of three of the sodomy counts about which the complainant failed to offer testimony. With regard to the remaining charges in the indictment submitted to the jury the evidence was much more than legally sufficient to justify the finding of guilty. Sixth, and finally, Campbell's claim of a New York state-law discovery violation under *People v. Rosario* based on the failure to turn over alleged videotaped grand jury testimony of the child victims is factually unsupported since there was no videotaped testimony taken of them.

### 4.    Cumulative Error

Taken singly or together, none of the alleged inadequacies on the part of trial counsel amount to constitutionally ineffective representation. After reviewing trial record in its entirety, the Court is convinced that there is no reasonable possibility that the outcome of Campbell's trial would have been different had defense counsel taken the actions Campbell believes he should have taken. Campbell's allegations of ineffective assistance amount to nothing more than disgruntled carping and do not present a basis for habeas relief. Accordingly, they are dismissed.

### B.    Allegations of Prosecutorial Misconduct

Under "Ground two" of the form Petition, Campbell has written the following:

> THE CONDUCT OF THE PROSECUTOR DENIED THE DEFENDANT OF A
> FAIR TRIAL. [1] The Prosecutor lied to the Grand Jury concerning the dates of
> the crimes perposely [sic] exaggerated [sic] the alleged time frames; [2]
> threatened defense witnesses with prosecution if they took the stand; [3] coached
> witnesses [sic] testimony, [4] made an improper summation and other matters
> related in the petitioner [sic] attachment: Background Facts.

Pet. at 8, ¶22B (Dkt. #1); *see also* Pet'r Aff., ¶214 (Dkt. #4) ("Whether the defendant was denied

a fair trial and due process by prosecutorial misconduct before and during trial and during her

summation."). As discussed below, the first claim is not cognizable on habeas review. I agree

with respondent that the second, third, and fourth claims of error by the prosecutor have not been

properly exhausted, but must be "deemed" exhausted and procedurally barred from habeas

review.

> **1.     The claim alleging prosecutorial misconduct in the grand jury is not
> cognizable on federal habeas review.**

Not only has Campbell failed to adduce any credible evidence in support of his claim that

the prosecutor "lied to the Grand Jury," the claim itself is not cognizable in this federal habeas

proceeding. The verdict of guilty by the petit jury at Campbell's trial necessarily renders any

irregularities before the grand jury harmless as it establishes not only that there existed probable

cause to indict him, but also that the defendant is "in fact guilty as charged beyond a reasonable

doubt." *United States v. Mechanik*, 475 U.S. 66, 68 (1986); *Lopez v. Riley*, 865 F.2d 30, 32 (2d

Cir. 1989) (holding that habeas petitioner's "claims of impropriety before the grand jury in this

case concern[ing] the sufficiency of the evidence, a failure to develop exculpatory evidence by

the prosecutor, the presentation of prejudicial evidence and error in explaining the law" . . . were

"cured in the trial before the petit jury, which convicted"). Accordingly, this claim is not cognizable on habeas review and it is dismissed.

> ### 2. The claims that the prosecutor threatened defense witnesses with criminal charges, "coached" witnesses, and committed misconduct during summation are procedurally defaulted.

Campbell presented the above-listed claims involving alleged prosecutorial misconduct in "Point III" of his *pro se* supplemental brief on direct appeal–specifically, that the "prosecutor's conduct, by improperly denigrating the defense during her summation, vouching for the credibility of the state's witnesses, threatening defense witnesses with prosecution, and abusing her office's authority denied the defendant the right to a fair trial." *See* Petitioner's *Pro Se* Supplemental Appellate Brief at 2, 31-32, Resp't Ex. A; *see also id.* at 33-35, Resp't Ex.A. Trial counsel did not object during the summation, but he "noted for the record" that he believed that the prosecutor had made improper commentary. Trial counsel confirmed, however, that he was not seeking any particular relief from the trial court in this regard. Then, counsel at sentencing asserted a claim of prosecutorial misconduct in support of the C.P.L. § 330.30 motion to set aside the verdict. The trial judge ruled from the bench that the prosecutor's comments were fair comment on the evidence and not objectionable.

Subsequently, on direct appeal, the Appellate Division declined to address the "contentions concerning allegedly improper comments made by the prosecutor . . . ." *People v. Campbell*, 286 A.D.2d at 979 (citing, *inter alia*, *People v. Zhi Qiang Li*, 275 A.D.2d 803 (App. Div. 2d Dept.) ("The defendant did not object to the summation remarks made by the prosecutor that he now claims were improper. Accordingly, his arguments regarding those comments are unpreserved for appellate review."), *leave denied*, 96 N.Y.2d 740 (N.Y. 2000)); *see also* N.Y.

CRIM. PROC. LAW § 470.05(2) (referring to this proposition as the "contemporaneous objection rule"). This was based on the lack of a timely objection during trial. Respondent asserts, and I agree, that the last state court to have considered the issue of the prosecutor's summation rejected it on an "adequate and independent" state ground.

It is well established that "federal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim." *Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir. 2000); *see also Fama v. Commissioner of Corr. Servs.*, 235 F.3d 804, 810 n. 4 (2d Cir. 2000) (where a state court "says that a claim is 'not preserved for appellate review' and then rules 'in any event' on the merits, such a claim is not preserved"). For the adequate and independent state ground doctrine to foreclose habeas review, the state rule relied upon must be a "firmly established and regularly followed state practice." *James v. Kentucky*, 466 U.S. 341, 348 (1984); *accord Lee v. Kemna*, 534 U.S. 362, 376 (2002). The rule upon which the Appellate Division based its decision in Campbell's case is codified at C.P.L. § 470.05(2). The "contemporaneous objection rule," as it is known, has been recognized as a firmly established and regularly followed rule in New York and has been held to be an "adequate and independent" state basis for rejecting a claim of prosecutorial misconduct. *See Velasquez*, 898 F.2d at 9.

Although this claim is procedurally barred, Campbell can overcome the procedural bar if he can either (1) demonstrate that the failure to consider the federal claim will result in a fundamental miscarriage of justice, specifically the conviction of an actually innocent person, or (2) show good cause for the default and that he will be prejudiced by this Court's failure to

review of the claim. *See*, *e.g.*, *Harris v. Reed*, 489 U.S. 255, 262 (1989). I note that beyond simply asserting that respondent is incorrect, Campbell did not address respondent's argument regarding the procedural default of his prosecutorial misconduct claims. Specifically, Campbell has made no showing of cause for the default, and has not come forward with new evidence that he is factually innocent. The claim of prosecutorial misconduct on summation is accordingly procedurally defaulted and habeas review of it is unavailable.

With regard to the remaining issues of prosecutorial misconduct, it appears that they were included in the Appellate Division's blanket dismissal of the "remaining contentions" raised by petitioner as "without merit." Appellate counsel did not seek review of them in his leave letter to the New York Court of Appeals, which means that they are unexhausted because they have not been through one complete round of New York's established review process. Although Campbell also raised them in various forms in his first and second C.P.L. § 440.10 motions, it does not appear that he included them in either of his leave applications to the Appellate Division pursuant to C.P.L. § 460.15. For instance, in his second motion to vacate the judgment, Campbell alleged that the prosecutor threatened to prosecute petitioner's mother and petitioner's sister with witness tampering if they took the stand. Then, in his subsequent leave application to appeal the denial of second C.P.L. § 440.10 motion, Campbell blamed counsel for not calling his mother as a witness, but he did not seek review on the issue of the alleged prosecutorial threats. Therefore, he failed to complete a full round of the appellate review process with regard to the claims involving alleged prosecutorial threats, and the claim is not fully exhausted. However, the claim must be deemed exhausted because he cannot raise them in any state court forum. *See Grey v Hoke*, 933 F.2d 117, 119-120 (2d Cir. 1991); N.Y. COURT RULES § 500.10(a); N.Y. CRIM. PROC.

LAW §§ 440.10(2)(a), (c). That procedural default bars review here. Campbell has not shown

cause for the default and actual prejudice as a result of the alleged violation of federal law, and

has not demonstrated that failure to consider the remaining claims of alleged prosecutorial

misconduct will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S.

722, 750 (1991). Accordingly, those claims are subject to an unexcused procedural default and

further review of them on habeas is unavailable.

### C.    Claims of Trial Court Error

Under "Ground three" of the form Petition, Campbell states as follows:

> THE TRIAL COURT DENIED THE DEFENDANT THE RIGHT TO
> CONFRONT WITNESS [sic], PRESENT A DEFENSE, AND A FAIR TRIAL
> BY ITS ACTIONS AND RULINGS. The trial court failed to follow the law
> concerning accepting oaths from children prevented the defendant from cross
> examining witnesses and from putting on a defense.

Pet. at 8, ¶22C (Dkt. #1).  Then, in his subsequently-filed Affidavit (Dkt. #4), Campbell writes,

"[s]o that there will be no mistake as to the legal questions . . . being presented in this case, the

defendant asks this court to resolve the following questions . . . ." Pet'r Aff., ¶204 (Dkt. #4).

Campbell lists the following claims, which appear to amplify the errors alleged in "Ground

three" of the Petition:

> ¶205.  Whether the trial court's failure to properly qualify witnesses deprived the
> defendant of the right to due process and a fair trial.
> ¶206.  Whether the court's failure to allow cross examination about prior fabrication of
> the witnesses deprived the defendant of the right to present his defense, due
> process and a fair trial.
> ¶207.  Whether the bolstering testimony of Chezere Campbell [petitioner's son and one
> victim's brother] was so prejudicial that it deprived the defendant of the right to a
> fair trial.
> ¶208.  Whether the trial court's allowing of the examining physician to grossly violate
> hearsay rules by testifying, on direct examination, to the alleged facts of the crime,
> and introducing alleged additional acts included in the indictment, denied the

defendant of a fair trial and due process of law.

¶209.   Whether the trial court's denial of the introduction of past documented incidents of false accusations lodged against the defendant by the same members of the family now before the court denied the defendant the right to present a defense in violation of the right to a fair trial and due process.

. . .

¶213.   Whether the defendant was denied a fair trial by the trial court's comments during proceedings before the jury in the lower court.

. . .

*See* Pet'r Aff., ¶¶205-9, 213 (Dkt. #4). The allegations in ¶¶205-209 were raised by Campbell's appellate counsel in his brief to the Appellate Division on direct appeal. Campbell, in his *pro se* supplemental appellate brief, presented the allegations in ¶213 to the Appellate Division on direct appeal. With regard to the alleged hearsay offered by the victim's brother (¶207), the Appellate Division rejected the claim as follows:

> Defendant further contends that the court erred in admitting the hearsay testimony of the brother of one of the victims. Contrary to defendant's contention, the testimony of that witness merely set forth the sequence of events and was offered to establish that statements had been made, not to establish the details set forth therein.

*People v. Campbell*, 286 A.D.2d at 979. However, the Appellate Division held, "[d]efendant failed to preserve for . . .  review his further contention that the testimony of that witness bolstered his sister's testimony." *Id.* (citing N.Y. Crim. Proc. Law § 470.05(2)). Similarly, the Appellate Division rejected as unpreserved "his contentions that the examining physician was improperly permitted to discuss the subjective statements of the victims[.]" *Id.* Thus, the claims set forth in ¶207 and ¶208 of Pet'r Aff. (Dkt. #4) were dismissed based upon the failure to comply with the contemporaneous objection rule, which has been found to be an adequate and independent ground for dismissing a claim of evidentiary error. *See Fernandez v. Leonardo*, 931

F.2d 214, 216 (2d Cir.) (noting that petitioner's failure to object under C.P.L. § 470.05(2) at trial

to the admission of certain evidence constituted an adequate and independent state ground and

created a procedural default), *cert. denied*, 502 U.S. 883 (1991); *see also Garcia v. Lewis*, 188

F.3d 71, 79 (2d Cir.1999) ("[W]e have observed and deferred to New York's consistent

application of its contemporaneous objection rules.") (citing, *inter alia*, *Bossett v. Walker*, 41

F.3d 825, 829 n. 2 (2d Cir.1994) (holding that petitioner's claim regarding the trial court's failure

to include a circumstantial evidence charge also is procedurally barred because petitioner failed

to object to the charge as required by C.P.L. § 470.05(2) and thus did not preserve the issue for

appeal), *cert. denied*, 514 U.S. 1054 (1995)). Because there is an adequate and independent

finding by the Appellate Division that Campbell procedurally defaulted on his challenge to this

alleged error by the trial court, Campbell he would have to show in his habeas pleadings "cause

for . . . the alleged violation of federal law, or demonstrate that failure to consider the claims will

result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. at 750.

Campbell does not allege cause or prejudice; nor does he make the showing of factual innocence

required for the "fundamental miscarriage of justice" exception. Because Campbell has failed to

overcome the procedural default, the claims set forth in ¶¶207-208 of Pet'r Aff. (Dkt. #4) are

dismissed without reaching the merits.

In any event, not only is Campbell's claim of improper "bolstering" (¶207) procedurally

barred, it is also not cognizable on federal habeas review. Courts in this Circuit has found that

"[a]lthough bolstering is a practice prohibited in various states, including New York, the practice

is not forbidden by the Federal Rules of Evidence and is not sufficiently prejudicial to deprive a

defendant of his due process right to a fair trial." *Vega v. Berry*, 90 Civ. 7044, 1991 WL 73847 at

1 (S.D.N.Y. April 29, 1991) (footnote omitted). It has been observed that "this Circuit has never regarded the practice [of bolstering] as inimical to trial fairness." *Orr v. Schaeffer*, 460 F. Supp. 964, 967 (S.D.N.Y. 1978); *accord, e.g., Harris v. Hollins*, 95 Civ. 4376, 1997 WL 633440 at 3 (S.D.N .Y. Oct. 14, 1997) ("The concept of 'bolstering' really has no place as an issue in criminal jurisprudence based on the United States Constitution. It is at most a New York State rule or policy, . . . [v]iolation of [which] does not rise to a constitutional level.").[8]

The Court turns next to the other claims of trial court error set forth in Petitioner's Affidavit (Dkt. #4). Under ¶205, Campbell asserts that the trial court's swearing-in of the children as witnesses was in error. The Appellate Division specifically held that the trial court "conducted a proper colloquy to determine that those witnesses understood the nature of an oath[.]" *People v. Campbell*, 286 A.D.2d at 979, 730 N.Y.S.2d 762 (citing N.Y. CRIM. PROC. LAW § 60.20(2), which, at the time of Campbell's trial, provided in relevant part that "[a] child less than twelve years old may not testify under oath unless the court is satisfied that [she] understands the nature of an oath."). As an initial matter, "[i]t is not the province of a federal habeas court to reexamine state-court determination on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68  (1991); *see also Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). Whether the trial court properly admitted sworn testimony from the child complainants in accordance with the requirements of C.P.L. § 60.20(2) is a matter best left to the New York state courts. *See, e.g.,*

---

[8]     *See also Malik v. Khoenan*, 94 Civ. 8084, 1996 WL 137478 at 4 (S.D.N.Y. Mar. 26, 1996) ("A claim of bolstering is not a federal constitutional claim cognizable on habeas review."); *Connolly v. Artuz*, No. 93 CV 4470, 1995 WL 561343 at 7-8 (E .D.N.Y. Sept. 15, 1995); *Styles v. Van Zandt*, 94 Civ. 1863, 1995 WL 326445 at 5 (S.D.N.Y. May 31, 1995) (holding that "a claim of improper 'bolstering' is not a cognizable basis of federal habeas relief"), *aff'd mem.*, 101 F.3d 684 (2d Cir.), *cert. denied*, 519 U.S. 936 (1996); *Snow v. Reid*, 619 F. Supp. 579, 582 (S.D.N.Y. 1985) ("The concept of 'bolstering' really has no place as an issue in criminal jurisprudence based on the United States Constitution. It is at most a New York State rule or policy. . . . Violation of that rule, . . . does not rise to a constitutional level.").

*Rodriguez v. Greiner*, 274 F.Supp.2d 264, 267 (E.D.N.Y. 2003) (holding that "[w]hether the properly admitted unsworn testimony of the victim was sufficiently corroborated in accordance with the requirements of New York C.P.L. 60.20(3) is a matter left to the state courts"). Campbell has not identified any federal constitutional right which was abridged so as to justify interference with the trial court's ruling by a federal court on habeas review. And, there was no error as a matter of New York law, under which a trial court has broad discretion in admitting sworn child testimony. Unlike cases in which admission of sworn testimony from a child has been ruled an error, in this case the record demonstrates that Shakia, Shanna and Shamika all understood the difference between the truth and a lie and understood the nature of an oath. There is nothing in the record to indicate that the trial court abused its discretion in admitting the three complainants' testimony.

The Court turns next to the allegations in ¶206 of Petitioner's Affidavit (Dkt. #4) based upon the limitation of questioning regarding alleged prior fabrication by the victims; in ¶209 pertaining to the preclusion of past incidents of false accusations against petitioner; and in ¶213 with regard to allegedly improper comments by the trial court. These issues were presented to the Appellate Division in appellate counsel's brief or in petitioner's *pro se* brief. They were summarily rejected arguments as part of the "remaining contentions" which the Appellate Division found to be "without merit." *Id.* at 980.

Petitioner only fully exhausted the claim in ¶209, however. Appellate counsel did assert in the leave application a claim regarding trial court's refusal to allow introduction of evidence that family members of the child victims had falsely accused petitioner and his mother of sexual misconduct in the past. However, the allegations set forth in ¶¶206 & 213 were not mentioned.

Thus, as respondent argues, Campbell has failed to exhaust the claims regarding the limitation on evidence concerning alleged instances of prior fabrication (¶206) and the allegedly improper comments by the trial judge because they have not been through one complete round of the appellate review process.[9] However, these claims must be "deemed exhausted" since Campbell faces an absence of corrective process were he to return to state court in an attempt to exhaust them; he has already used the one direct appeal to which he is entitled, *see* N.Y. COURT RULES § 500.10(a), and if he were to raise these claims in a C.P.L. § 440.10 motion, the motion court would be obligated to dismiss them because they were raised on direct appeal. *See* N.Y. CRIM. PROC. LAW § 440.10(2)(a). These state rules that give rise to constructive exhaustion also operate to cause a procedural default of the claims, which petitioner can only overcome by demonstrating cause *and* prejudice, or that a fundamental miscarriage of justice will result. This Campbell has failed to do. Accordingly, the claims set forth in ¶205 and ¶206 of Pet'r Aff. (Dkt. #4) are subject to an unexcused procedural default and further habeas review of them is foreclosed.

Finally, I turn to Campbell's exhausted claim (Pet'r Aff., ¶209) based on the trial court's alleged error in declining to allow the defense to present evidence that Alicia Penn, the mother of the two nieces that Campbell was accused of molesting, had falsely accused both Campbell and his mother, Esther Campbell, of sexual impropriety. These allegations were purportedly made

---

[9]  In *Grey*, the petitioner identified one claim in his leave to appeal letter and also attached his Appellate Division briefs, which raised three issues including the one specified in the letter. *Id.* at 120. The Second Circuit held that only the one expressly raised claim had been exhausted, noting that "[t]he only possible indication that the other two claims were being pressed was the inclusion of a lengthy brief originally submitted to another court. This did not fairly apprise the court of the two claims." *Grey v. Hoke*, 933 F.2d 117 (2d Cir. 1991). *See also Jordan v. LeFevre*, 206 F.3d 196, 198 (2d Cir. 2000) (petitioner in *Jordan* argued one of his claims in the application for leave to appeal, and "asked that he be given permission to appeal 'for all these reasons and the reasons set forth in his Appellate Division briefs'"; Second Circuit held that "arguing a single claim at length and making only passing reference to possible other claims to be found in the attached briefs does not fairly apprise the state courts of those remaining claims.").

during a custody proceeding involving Campbell's daughter, Shanna, in 1994 and 1995. Defense counsel stated that Alicia Penn, and her sister, Esther Penn, had sided with Shanna's natural mother (Stephanie Campbell). Petitioner's other sister, Battiese (Esther Campbell's daughter), had sided with him. *See* T.235-39. Trial counsel contended that this evidence was necessary to provide a context for why the child complainants might be lying and attempting to falsely incriminate petitioner. According to trial counsel, Alicia Penn's accusation must have been false because Campbell was awarded joint custody of Shanna and was made the custodial parent. *See* T.236. Trial counsel argued that Alicia Penn and the other family members who objected to this custody ruling subsequently had fabricated the accusations on which Campbell was being tried to prevent Campbell and his mother from relocating to Florida with the children. T.237. Trial counsel stated that he intended to place this information before the jury through Campbell's own testimony, and by calling Campbell's mother as a witness.[10] The trial court agreed to allow the defense to ask questions about the dynamics of the relationships within the family, but declined to permit the parties to litigate the allegations of misconduct made against Campbell and his mother in an unrelated family court proceeding. T.239-40. Campbell argues that he was prejudiced by not being permitted to "bring in any evidence of similar false accusations by the victims' parents . . . ." Pet'r App. Br. at 15. According to Campbell, "[t]he defense could not claim the children were coerced by their parents" because the trial court refused to "allow proof of other occasions in which the defendant may have been falsely accused by the victims' parents of the same or similar sexual misconduct." *Id.*

---

[10]     Ultimately, Campbell decided not to call his mother as a witness after learning through her assigned attorney that she intended to assert her fifth amendment privilege against self-incrimination. *See* T.324-39.

It is well-settled that a habeas court may review only those claims based on federal law. *See* 28 U.S.C. § 2254(a); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). Thus, to the extent that Campbell is claiming an error of New York state evidentiary law, such a claim is not cognizable on habeas review. *See Jones v. Stinson*, 229 F.3d 112, 120 (2d Cir. 2000); *Rosario v. Kuhlman*, 839 F.2d 918, 924-25 (2d Cir. 1988); *accord, e.g.*, *Roberts v. Scully*, 875 F.Supp. 182, 189 (S.D.N.Y.), *aff'd mem.*, 71 F.3d 406 (2d Cir.1995). "[E]rroneous evidentiary rulings do not automatically rise to the level of constitutional error," and habeas court's duty "is to determine whether the excluded testimony was material to the presentation of the defense so as to deprive the defendant of fundamental fairness." *Rosario*, 839 F.2d at 924; *accord, e.g.*, *McCray v. Artuz*, 93 Civ. 5757, 1994 WL 603057 at *2 (S.D.N.Y. Nov. 3, 1994). A petitioner seeking habeas relief based on an allegedly erroneous evidentiary ruling bears the "heavy burden" of establishing that the trial court's error constituted a deprivation of a constitutionally recognized right such as the right to a fair trial. *Roberts v. Scully*, 875 F. Supp. at 189; *accord, e.g.*, *Grant v. Demskie*, 75 F. Supp.2d 201, 203-04 (S.D.N.Y.1999), *aff'd*, 234 F.3d 1262, 2000 U.S. App. LEXIS 29319, 2000 WL 1715224 (2d Cir. Nov.13, 2000) (unpublished op.).

Campbell has not demonstrated that the trial court's ruling was an abuse of discretion under New York state evidentiary law. "It is a cardinal and well-settled principle that offers of proof must be made clearly and unambiguously. Before a party excepts on account of the rejection of evidence, he should make the offer in such plain and unequivocal terms as to leave no room for debate about what was intended." *People v. Williams*, 6 N.Y.2d 18, 23 (N.Y. 1959) (quotation omitted). However, the defense offer of proof did not set forth the substance of the mother's proposed testimony, and did not demonstrate that she could give competent testimony

to negate Alicia Penn's accusations. Furthermore, the defense did not specify the improper behavior of which Campbell and his mother were accused, let alone whether it involved any of the same child victims in the instant case. By the same token, the defense failed to offer an adequate explanation as to why the accusations were false. The fact that Campbell was accorded custody of his daughter cannot be deemed to be conclusive proof that any of the prior allegations were false. *See Kelly v. Meachum*, 950 F. Supp. 461, 469-71 (D. Conn.1996) (holding that, notwithstanding verdict of "not guilty" in earlier sexual assault case, the court could not "conclude with any degree of probability that . . . [the] complaint in the earlier case was false"). I cannot agree with Campbell that the trial court abused its discretion when it prohibited a trial-within-a-trial of the  truth or falsity of the allegations made during the earlier custody proceeding.

    To the extent that Campbell also has alleged that the trial court's ruling violated his rights under the Sixth and Fourteenth Amendments of the United States Constitution by depriving him of the ability to present evidence on his behalf, habeas relief similarly is unwarranted. A defendant's right to present a complete defense through the introduction of relevant evidence is not absolute. The right to present evidence "'may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process.'" *Michigan v. Lucas*, 500 U.S. 145, 149 (1991) (quoting *Rock v. Arkansas*, 483 U.S. 44, 55 (1987)). For example, it is permissible for a state court to exclude evidence in order to prevent 'harassment, prejudice, [or] confusion of the issues." *Crane v. Kentucky*, 476 U.S. 683, 689-90 (1986) (citing *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)). Moreover, even where a trial court's rulings excluding relevant evidence are found to be erroneous, those rulings "do not automatically rise to the level of constitutional error sufficient to warrant issuance of a writ of habeas corpus. Rather, the writ would issue only

where petitioner can show that the error deprived [him] of a fundamentally fair trial." *Taylor v. Curry*, 708 F.2d 886, 891 (2d Cir. 1983) (citing *Chambers v. Mississippi*, 410 U.S. 284, 302-03 (1973)).

Even assuming that the prior allegations had been made by Alicia Penn, the only "evidence" that Campbell adduced to prove that the allegations were false was the fact that he was awarded joint custody of his daughter. Campbell clearly failed to present any competent evidence to prove the falsity of Alicia Penn's alleged prior accusations, and he therefore cannot demonstrate that his fundamental due process right to a fair trial was prejudiced by the trial court's ruling regarding this evidence. *Accord Brown v. Breslin*, No. 04 Civ. 7970(PAC)(DF), 2008 WL 857767, at *12 (S.D.N.Y. Mar. 31, 2008) (adopting report and recommendation) (habeas petitioner claimed that the trial court improperly precluded cross-examination of victim regarding similar allegations she had made about her two stepbrothers, arguing that this his restriction on cross-examination constituted a violation of his constitutional rights (1) to due process, and (2) to confront his accuser; district court found that the trial record made "plain that, based on the information before it, the trial court understood that the Family Court had dismissed the charges against [the victim's] stepbrothers due to a lack of evidence, and not on the basis that [the victim] had been untruthful; "[i]n the absence of any particular testimony or other evidence introduced at the Family Court proceeding suggesting that [the victim] testified falsely, it is difficult to conclude that the trial court's ruling, rejecting Petitioner's argument as to the relevance of [the victim's]  prior complaints, deprived Petitioner of a fundamentally fair trial.); *Grant v. Demskie*, 75 F. Supp.2d at 203-04, 221 (on habeas review, finding no constitutional error in trial court's exclusion of evidence of the complainant's prior allegations of sexual abuse,

as the petitioner "had no proof that any of [complainant's] other sexual abuse allegations were demonstrably false").

### D.      Illegality of Petitioner's Sentence

In his Affidavit (Dkt. #4), Campbell challenges "[w]hether the sentence was illegal and excessive in violation of the eight [sic] amendment, equal protection and due process. Pet'r Aff., ¶210 (Dkt. #4). When this claim was raised on direct appeal, the Appellate Division held as follows:

> We reject defendant's contention that the sentence is illegal. "[A]lthough the aggregate sentence imposed exceeds the maximum aggregate term set forth in Penal Law § 70.30(1)(e)(vi), that section does not require that we modify the sentence". That section "requires only that the Department of Correctional Services determine the aggregate maximum length of imprisonment consistent with the applicable statutory limitation".

*People v. Campbell*, 286 A.D.2d at 979 (internal citations omitted). "Penal Law § 70.30(1)(c)(I) 'does not restrict the number or length of the individual consecutive sentences that may be imposed, nor does it require that the resulting aggregate sentence be vacated whenever the aggregate maximum exceeds the limitations contained in the statute[.]'" *People v. Bachman*, 158 A.D.2d 930, 551 N.Y.S.2d 93, 94 (App. Div. 4th Dept. 1990) (citing *People v. Moore*, 61 N.Y.2d 575, 578 (N.Y. 1984) ("Where the aggregate maximum term of consecutive sentences imposed for convictions of two or more crimes exceeds the applicable limitation set forth in section 70.30 (subd. 1, par. (c)) of the Penal Law, the term shall be 'deemed' to be equal to that limitation and 'reduced' accordingly.").

With regard to the first victim, Campbell was sentenced to 7 years on Count One (Sexual Abuse in the First Degree), 25 years determinate on Count Two (Rape in the First Degree), and 1

year on Count Six (Endangering the Welfare of a Child).  The sentences for Counts One, Two and Six were set to run concurrently with each other and consecutively to all other counts. With regard to the second victim, Campbell was sentenced to 25 years determinate on Count Seven (Rape in the First Degree), 25 years on Count Eight (Sodomy in the First Degree), 25 years determinate on Count Nine (Sodomy in the First Degree), and 1 year on Count Ten (Endangering the Welfare of a Child). The sentences for Counts Seven through Ten were set to run concurrently with each other and consecutively to all other counts. With regard to the third victim, Campbell was sentenced to 25 years determinate on Count Eleven (Rape in the First Degree), 25 years on Count Twelve (Sodomy in the First Degree), and 1⅓ to 4 years on Count Thirteen (Incest), and 1 year on Count Fourteen (Endangering the Welfare of a Child). The sentences on Counts Eleven through Fourteen were set to run concurrently with each other and consecutively to all other counts. The aggregate term thus was 75 years determinate (three times twenty-five, since the longest sentence imposed with regard to each of the three victims was 25 years determinate). As discussed above in this Decision and Order, by operation of New York statutory law, the aggregate term imposed was deemed to be fifty (50) years, however. *See* N.Y. PENAL LAW §§ 70.30(1)(c); 70.30(1)(e)(vi); 70.02(1)(a).  Campbell thus has not demonstrated that there was an error of state law with regard to the sentence he received, or with regard to the appellate court's decision not to exercise their discretion to reduce it in the interests of justice.

Likewise, Campbell's claim that his sentence is cruel and unusual within the meaning of the Eighth Amendment, is without merit. The Eighth Amendment, which applies against the States by virtue of the Fourteenth Amendment, *Robinson v. California*, 370 U.S. 660, 666-67 (1962), provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor

cruel and unusual punishments inflicted." The Eighth Amendment prohibits imposition of a sentence that is "grossly disproportionate" to the severity of the crime. *Rummel v. Estelle*, 445 U.S. 263, 271 (1980). *Rummel* has been held to stand for "the proposition that federal courts should be reluctant to review legislatively mandated terms of imprisonment, and that successful challenges to the proportionality of particular sentences should be exceedingly rare." *United States v. Santos*, 64 F.3d 41, 45 (2d Cir.1995) (quoting *Hutto v. Davis*, 454 U.S. 370, 374 (1982) (*per curiam*) (internal quotation marks and citation omitted)). "In view of the substantial deference that must be accorded legislatures and sentencing courts, a reviewing court rarely will be required to engage in extended analysis to determine that a sentence is not constitutionally disproportionate." *Santos*, 64 F.3d at 46 (quoting *Solem v. Helm*, 463 U.S. 277, 290 n. 16 (1983)). Nevertheless, "as a matter of principle . . . a criminal sentence must be proportionate to the crime for which the defendant has been convicted." *Id.* at 46 (quoting *Solem*, 463 U.S. at 290).

Campbell argues that a sentence of fifty years given his age at the time of sentencing (thirty years-old), is tantamount to life in prison. As the Court of Appeals for the Second Circuit has explained, the "Eighth Amendment condemns only punishment that shocks the collective conscience of society." *United States v. Santos*, 64 F.3d at 47 (quoting *United States v. Gonzalez*, 922 F.2d 1044, 1053 (2d Cir.), *cert. denied*, 502 U.S. 1014 (1991)). Stated another way, the Eighth Amendment forbids only extreme sentences which are "grossly disproportionate" to the crime of which defendant was convicted. *Lockyer v. Andrade*, 538 U.S. 63, 72-73 (2003); *see also Harmelin v. Michigan*, 501 U.S. 957, 995 (1991). As an initial matter, it is well-established that a sentence of imprisonment that is within the limits of a valid state statute is not cruel and

unusual punishment in the constitutional sense. *See White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992). The Supreme Court has held that, for offenses less than manslaughter, sentences longer than twenty-five years are not grossly disproportionate. *See Ewing v. California*, 538 U.S. 11 (2003) (25 years to life for grand theft). Indeed, the federal courts have regularly rejected Eighth Amendment challenges to sentences where a defendant's crime was arguably less serious than Campbell's but the punishment even more severe than the present case. *See United States v. Santos*, 64 F.3d 41 (2d Cir.1995) (citing *Harmelin v. Michigan*, 501 U.S. at 996 (life without parole for possession of 672 grams of cocaine); *Hutto v. Davis*, 454 U.S. at 374 (forty-year sentence for possession with intent to distribute nine ounces of marijuana); *Rummel v. Estelle*, 445 U.S. at 286 (life sentence under state recidivist statute, where the three predicate offenses were fraudulent use of a credit card to obtain $80 worth of goods, passing a forged check in the amount of $28.36, and obtaining $120.75 by false pretenses); *United States v. Valdez*, 16 F.3d 1324, 1334 (2d Cir.) (life without parole for "merely middle-level drug dealers" not violative of Eighth Amendment), *cert. denied*, 513 U.S. 810 (1994)).

Considering Campbell's sentence in light of the above-discussed precedent, it is clear that the Eighth Amendment has not been offended. The Supreme Court has stated that "one could argue without fear of contradiction by any decision of [the Supreme Court] that for crimes concededly classified and classifiable as felonies . . . the length of the sentence actually imposed is purely a matter of legislative prerogative." *Rummel v. Estelle*, 445 U.S. at 274; *accord Harmelin v. Michigan*, 501 U.S. 957 (1991) (discussing the limited scope of the proportionality principle under the Eighth Amendment). The New York legislature enacted Penal Law § 70.30(1)(c)(i), which "does not restrict the number or length of the individual consecutive

sentences that may be imposed, nor does it require that the resulting aggregate sentence be

vacated whenever the aggregate maximum exceeds the limitations contained in the statute[.]"

*People v. Moore*, 61 N.Y.2d 575, 578 (N.Y. 1984); *accord, e.g.*, *People v. Bachman*, 551

N.Y.S.2d 93, 94 (App. Div. 4th Dept. 1990). Rather, the section requires only that the Department

of Correctional Services determine the aggregate maximum length of imprisonment consistent

with the applicable statutory limitation, *id.*, which, in this case is fifty years, as set forth in Penal

Law § 70.30(1)(e)(vii). Thus, although the aggregate term of the consecutive sentences imposed

by the trial court totaled seventy-five years, there never has been a possibility that Campbell

actually would be incarcerated for that period of time. This is because, as both the trial court and

the Appellate Division noted, the maximum time of incarceration was reduced by operation of

law to fifty years.

Taking into account the depravity of Campbell's crimes, and recognizing that the

consecutive sentences imposed were not illegal as a matter of New York law, the Court finds no

violation of the Eighth Amendment's prohibition against cruel and unusual punishment. Nor

does the Court find that the state court's sentencing decision amounted to an arbitrary or

capricious abuse of discretion, or that an error of law resulted in the improper exercise of the

sentencing judge's discretion and thereby unjustly deprived petitioner of his liberty. There were

no legal errors in the imposition of the sentence, and Campbell cites none. The consecutive

sentences were properly imposed under New York law for separate criminal acts which

constituted separate and distinct offenses. The evidence presented at trial demonstrated that the

petitioner engaged in separate sexual acts with three child victims.  Accordingly, the consecutive

sentences were authorized by state law and did not result in any unconstitutional deprivation of

the petitioner's liberty. *Accord*, *e.g.*, *Moore v. Irvin*, 908 F.Supp. 200, 208 (N.D.N.Y. 1995) (citing *Haynes v. Butler*, 825 F.2d 921, 924 (5th Cir. 1987) (citing *Hicks v. Oklahoma*, 447 U.S. 343, 346 (1980), *cert. denied*, 484 U.S. 1014 (1988)).  Campbell's challenge to the term of his sentence is therefore dismissed.

### E.    Defective Indictment

In ¶215 of his Affidavit (Dkt. #4), petitioner contends that "the indictment was jurisdictionally defective." On direct appeal, Campbell asserted two flaws in the indictment–that the child complainants should not have been permitted to give sworn testimony in the grand jury and and that the dates alleged did not sufficiently inform him of the time frame in which the crimes were committed, in violation of state law (C.P.L. § 200.50). The Appellate Division held that the claim was unpreserved due to Campbell's failure to have moved to dismiss the indictment as a whole, or any particular count, on those bases. Furthermore, claims alleging defects in the indictment have not been properly exhausted because they were not raised in federal constitutional terms before the Appellate Division, and were not presented at all to the Court of Appeals in the leave application.

Moreover, the claim does not present a federal constitutional question and, therefore, is not cognizable on federal habeas review. The Fifth Amendment right to be tried for a felony only upon a grand jury indictment was not incorporated by the Due Process Clause of the Fourteenth Amendment, and therefore does not pertain to the states. *See Hurtado v. California*, 110 U.S. 516 (1884); *LanFranco v. Murray*, 313 F.3d 112, 118 (2d Cir. 2002); *Fields v. Soloff*, 920 F.2d 1114, 1118 (2d Cir. 1990). Thus, petitioner's right to be tried on a felony only upon indictment by a grand jury is derived solely from the New York State Constitution. *See* N.Y. CONST., art. I, § 6.

Federal habeas review is available "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. 2254(a); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). Accordingly, this claim does not present a proper basis for federal habeas relief.

Moreover, Campbell has failed to demonstrate an error of New York state law. C.P.L. § 200.50 provides than an indictment must contain a "statement in each count that the offense charged therein was committed on, or on or about, a designated date, or during a designated period of time." N.Y. Crim. Proc. Law § 200.50(6). The New York Court of Appeals has explained that C.P.L. § 200.50(6) "neither requires the exact date and time, nor does it restrict the length of the designated period of time which may be stated." *People v. Keindl*, 68 N.Y.2d 410, 417 (N.Y. 1986) (citation omitted) (finding unreasonable on their face counts which charged sodomy and sexual abuse over a period of 10, 12 and 16 months); *accord United States v. Tramunti*, 513 F.2d 1087, 1113 (2d Cir. 1975) ("[A]n indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime."). New York law requires that "the interval of time set forth in each count *reasonably* serve the function of protecting defendant's constitutional right to be informed of the nature and cause of the accusation so as to enable him to prepare a defense."  *People v. Keindl*, 68 N.Y.2d at 417 (emphasis supplied); *accord, e.g., People v. Beauchamp*, 143 A.D.2d 13, 14 (App. Div. 1st Dept.) ("A defendant is thus entitled to know when he is alleged to have committed the acts charged against him. While this requirement does not mean that the exact

time must be given, the time span in which the charges alleged to have occurred must be
reasonable.").

Most significantly for Campbell's situation, the New York Court of Appeals has
emphasized that when time is not a substantive or essential element of the crime charged–as is
true with regard to the offenses of rape and sodomy–a determination as to whether the time
specified is "reasonable" must be made on an *ad hoc* basis by considering all relevant
circumstances. *People v. Keindl*, 68 N.Y.2d at 419 (explaining that in addition to the time span
set forth and the knowledge that the prosecution has or should have of the exact dates of the
crime, the age and intelligence of the victim and other witnesses, the attendant circumstances,
and the nature of the offense (e.g., whether the offense is likely to occur at a specific time or to be
discovered immediately), should be considered when determining reasonableness of the time
period). *Accord*, *e.g.*, *United States v. Antonelli*, 439 F.2d 1068, 1070 (1st Cir. 1971) (holding that
the lack of a precise date is not a fatal defect if it is not a substantive element of the crime);
*United States v. Bagaric*, 706 F.2d 42, 61 (2d Cir. 1983) (Where time is not an essential element,
it suffices to state the time in approximate terms, as long as such a statement is reasonable.), *cert.*
*denied*, 464 U.S. 840 (1983). In this case, all counts of sexual abuse, rape and incest were alleged
to have  occurred during a span of time when petitioner and the victims were staying at same
house in which the incident occurred. Considering the fact that young complainants often do not
remember the exact date of when an alleged offense occurred, the time spans in the indictment
are not unreasonable. *See People v. Weber*, 25 A.D.3d 919, 922 (App. Div. 3d Dept. 2006)
("Count one charged sexual abuse "on or about the [s]ummer of 1996," when the victim was
eight years old. Time was not an essential element of the crime and, in light of all of the

circumstances of this case, we find that the allegation was reasonably specific as to the time period for the commission of that act.") (citations omitted)

### F.    Claims of Error Regarding the Appellate Process

Campbell's Affidavit (Dkt. #4) presents the following allegations directed toward the Appellate Division's handling of his direct appeal. *See* Pet'r Aff., ¶¶216-19 (Dkt. #4). The allegations are quoted below and addressed and in turn.

> ¶216.   Whether the defendant was denied of [sic] due process and equal protection when the appellate division constructively denied the defendant the process for an extension of time to file a supplemental brief, and preserve several issues for appellate review.

Paragraph 216 is factually baseless because Campbell was permitted to file, and did file, a *pro se* supplemental brief exhaustively arguing a number of claims.

> ¶217.   Whether the appellate division's finding that issues it claimed were not preserved for appellate review was in error in light of the fact that those issues were preserved for appellate review by trial counsel.

The contentions in Paragraph 217 have been addressed elsewhere in this Decision and Order in the Court's discussions regarding the various procedural defaults barring consideration of certain of Campbell's claims. The Court notes that Campbell has not provided any specifics as to how or why the Appellate Division erred in finding that the claims had not been preserved by a timely objection.

> ¶218.   Whether the appellate division's determination of the question of Effective Assistance of Counsel failed to take into account the Federal standard of Effective Assistance of Counsel.

The Supreme Court has never held that state courts are required to explicitly refer to federal law in disposing of claims of ineffective assistance of trial counsel. Thus, Paragraph 218 does not set

forth an allegation of error of constitutional dimension.

> ¶219.   Whether the motion for re-argument was sufficient to preserve issues for
> federal review where that was the last court decision concerning the merits
> of claims presented to the courts.

Campbell does not elaborate on what he specifically means by the allegations in Paragraph 219.

Campbell has failed to explain how, and the Court does not find that any Campbell's motions for

reargument were relevant to a determination of whether his habeas claims had been properly

preserved at the trial level for appellate review.

Campbell has failed to identify any error of federal constitutional dimension in

connection with his direct appeal. The foregoing allegations do not provide a basis for habeas

relief and are dismissed.

## V.   Conclusion

For the reasons set forth above, that Shannon Campbell's petition for a writ of habeas

corpus filed is denied. Furthermore, the Court finds that petitioner has not made a "substantial

showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2). Therefore, the

no certificate of appealability shall issue with respect to any of petitioner's claims.

/s/ *Victor E. Bianchini*
_____
VICTOR E. BIANCHINI
United States Magistrate Judge

Dated: May 30, 2008
        Rochester, New York.